# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\*\*\*

| | |
|---|---|
| BRANCH BANKING AND TRUST COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>D.M.S.I., LLC, *et al.*,<br><br>Defendants. | 2:11-cv-01778-MMD-VCF<br><br>**ORDER**<br><br>**(Motion To Compel Discovery (#55))** |

Before the court defendants D.M.S.I., LLC, Yoel Iny, individually and as Trustee of the Y&T Iny Family Trust dated June 8, 1994, as amended, Noam Schwartz, and NST Holding, Inc's Motion To Compel Discovery. (#55). Branch Banking and Trust Company (hereinafter "BB&T) filed an Opposition (#59), and defendants filed a Reply (#61). The court held a hearing on June 7, 2013. (#84).

**A.    Background**

Plaintiff BB&T filed this action on November 4, 2011, asserting claims for (1) breach of guaranty and (2) breach of the covenant of good faith and fair dealing. (#1). BB&T's claims arise from it acquiring by assignment from the Federal Deposit Insurance Corporation (hereinafter "FDIC") all the rights, title and interest in, to and under certain loan documents evidencing, securing, guarantying, and otherwise related to the Note[1]. *Id.* Prior to BB&T acquiring these rights, the defendants (also referred to as "Guarantors") executed and delivered to Colonial Bank, N.A. a Guarantee dated January 11, 2007, under the terms of which the Guarantors guaranteed the payment of all amounts due under the Note. *Id.*

---

[1] On January 11, 2007, GAC Storage Lansing, LLC, a Nevada limited liability company (hereinafter "Borrower"), executed and delivered a promissory note secured by deed of trust to Colonial Bank, N.A. in the original principal amount of $4,333,000.00 (hereinafter the "Note").

Colonial Bank became the successor to Colonial Bank, N.A. through conversion from a national banking association to a state-chartered bank. *Id.*

Colonial Bank closed on August 14, 2009, and the FDIC was named receiver in order to liquidate and distribute the assets of Colonial Bank. *Id.* On the same day, the FDIC assigned its rights under the Note to BB&T. *Id.* The Borrower failed to pay the outstanding balance under the Note by July 29, 2009, the maturity date of the Note. *Id.* On June 16, 2011, BB&T sent a letter to the Borrower and the Guarantors demanding that they cure the default within fifteen (15) days. *Id.* The Borrowers and Guarantors allegedly failed to cure the default. *Id.* On October 7, 2011, the Borrower filed a petition for relief under the United States Bankruptcy Code. *Id.* BB&T commenced this action against the Guarantors on November 4, 2011. *Id.*

On February 17, 2012, defendants filed a motion to dismiss for lack of jurisdiction. (#13). On February 29, 2012, plaintiff filed an amended complaint against all defendants (#14) and an *ex parte* motion for additional time to effect service by publication (#15). The parties filed a stipulation for extension of time to respond to first amended complaint on March 2, 2012. (#16). On the same day, the court entered an order granting the *ex parte* motion for additional time to effect service by publication (#15). (#17). On March 5, 2012, the court signed the stipulation for extension of time (#16). (#18). The defendants filed their answer on March 26, 2012. (#20). On March 29, 2012, the court issued an order denying the motion to dismiss (#13) *without prejudice*. (#22). On April 18, 2012, the defendants filed an amended answer to the complaint. (#23).

On May 2, 2012, the parties filed a proposed discovery plan and scheduling order (#24), which the court signed the same day (#25). On May 17, 2012, plaintiff filed an affidavit regarding service by publication. (#26). On June 5, 2012, plaintiff filed a motion for entry of clerks default. (#27). The clerk entered default on June 6, 2012. (#28). The parties filed a stipulation to amend the amended complaint (#14) and set aside clerk's default (#28) on June 27, 2012. (#29). The court signed the

stipulation (#29) on June 28, 2012. (#30). Plaintiff filed a second amended complaint on June 29, 2012. (#31). On July 16, 2012, defendants filed their answer to the second amended complaint. (#34). On July 27, 2012, defendant NST Holding, Inc., filed an answer to the second amended complaint. (#35).

On December 3, 2012, the parties filed a stipulation for extension of time for discovery (#43), and the court signed the stipulation (#44) on December 4, 2012. On January 14, 2013, defendants filed a motion to extend time to amend answer and for leave to file amended answer. (#47). On February 5, 2013, the parties filed a stipulation regarding allowance of disclosure of documents related to other loans. (#48). The court granted the motion to extend time (#47) on February 19, 2013. (#49). Defendants filed an amended answer on March 6, 2013. (#50). On March 13, 2013, the parties filed a stipulation to take the deposition of plaintiff's Rule 30(b)(6) witness (#52), and the court signed the stipulation on the same day (#53).

Also on March 13, 2013, defendants filed an amended motion to extend time to amend answer and leave to file amended answer and counterclaim. (#54). On March 14, 2013, defendants filed the instant motion to compel production of documents. (#55). On March 15, 2013, defendants filed a motion to shorten time (#56), which the court denied on March 18, 2013 (#57). On April 1, 2013, plaintiff filed an opposition to the amended motion to extend time (#58) and an opposition to the motion to compel (#59). On April 11, 2013, defendants filed a reply in support of their amended motion to extend time (#60) and a reply in support of their motion to compel (#61). On April 16, 2013, defendants filed a motion for partial summary judgment seeking dismissal of all claims against the trust defendants. (#63). On April 17, 2013, plaintiff filed a motion for summary judgment (#64) and defendants filed a motion for summary judgment (#65). On May 6, 2013, the court issued a minute order scheduling a hearing on the motion to compel (#55) for May 31, 2013. (#66). Upon stipulation by the parties (#76 and #77), the court held a hearing on June 7, 2013. (#84).

. . .

**B.      Motion to Compel**

   **1.      Relevant Facts**

Defendants ask this court to compel plaintiff to produce documents relating to the Purchase and Assumption Agreement (hereinafter "PAA"): the payments between the FDIC and BB&T.  (#55).  On June 29, 2012, plaintiff filed a Second Amended Complaint against defendants claiming (1) Breach of Promissory Note, (2) Breach of Guaranty, (3) Breach of the Covenant of Good Faith and Fair Dealing.  (#31).   Defendants state that "[a]s part of its suit, BB&T alleges it has a right to purported unpaid principal, interest and attorneys' fees from [d]efendants," and that plaintiff "bases its right to sue [d]efendants on FDIC's purported transfer of the disputed Note to BB&T."  (#55).

Defendants assert that they believe that on August 14, 2009, plaintiff and FDIC executed a PAA (Exhibit B).  *Id.*  Defendants state that the PAA provides for payments from the FDIC to plaintiff for certain loans under certain circumstances.  *Id.*   Defendants requested information regarding the FDIC payments, in several requests, including:

> REQUEST FOR PRODUCTION NO. 12: Please produce any and all documents referring to or relating to Schedule 4.15 of the Purchase and Assumption Agreement dated August 14, 2009 between you and the FDIC.
>
> REQUEST FOR PRODUCTION NO. 16: Please produce any and all documents, including emails, referring to or relating consideration paid by you to the FDIC for the Promissory Note.
>
> REQUEST FOR PRODUCTION NO. 18: Please produce any and all documents, including emails, referring or relating to '38836588365" as listed on the Allonge.
>
> REQUEST FOR PRODUCTION NO. 21: Please produce any and all documents, including emails, in the possession of the FDIC relating of referring to the Loan Documents.

*Id* (Exhibit C).  Defendants assert that plaintiff did not provide documents relating any of the FDIC payments in response to the requests, and that plaintiff would not produce the documents based on the argument that the FDIC/BB&T payments are irrelevant  *Id.*  Defendants represent to the court that the

plaintiff provided the same type of documents in the case of *Branch Banking and Trust Company v. Smoke Ranch Development, LLC*, Case No. 2:12-cv- 00453-KJD-NJK (hereinafter "Smoke Ranch Action")(Exhibit A). *Id.*

### 2. Defendants' Arguments

Defendants argue that the FDIC payments are relevant for various reasons, including: (1) plaintiff, "by operation of law, may not obtain a double recovery of payment," and therefore "[d]efendants have a right to determine as part of their discovery if [plaintiff] has already been paid under the disputed Note," (2) "as set forth in Defendants' disclosures, the PAA[,] as a loss sharing agreement[,] is a form of insurance and, thus, Defendants have a right to discover payments under the PAA," and (3) "as the Plaintiff, BB&T must comply with Chapter 104 and in particular, NRS I 104.3303 which requires BB&T to evidence value/consideration for the transfer of an instrument." (#55).

Defendants state that "[i]n support of liberal application of Rule 26, the Ninth Circuit has consistently stated "[w]e start with the premise that pre-trial discovery is ordinarily "accorded a broad and liberal treatment." *See Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993) (citing to *Hickman v. Taylor*, 329 U.S. 495, 507, 67 S.Ct. 385, 392, 91 L.Ed. 451 (1947)." *Id.*

With regard to the double recovery argument, defendants assert that "[i]n a variety of circumstances, courts consistently reject making awards or applying remedies which constitute a double recovery,"[2] and that "[w]ithout access to the FDIC payments, Defendants are simply unable to defend against an impermissible double recovery." *Id.* Defendants further argue that the documents produced in the Smoke Ranch Action demonstrate that (1) plaintiff received many different FDIC payments on the Smoke Ranch Note, (2) the PAA appears to allow for many different types of payments including

---

[2] *See e.g. Elyousefv. O'Reilly & Ferrario*, LLC, - Nev. -' 245 P.3d 547, 549 (2010) ("we hold that a plaintiff can recover only once for a single injury even if the plaintiff's asserts multiple legal theories. Thus, satisfaction of the plaintiffs damages for an injury bars further recovery for that injury."); *Davis v. Beling*, Nev. -' 278 P.3d 501, 513 (2012) ("We also note that in order to prevent a double recovery, any damages the Doughertys are awarded should be reduced by the amount of payments that they received from renting the Ping Property").

principal (charge downs), interest, and attorneys' fees, and (3) since plaintiff here is seeking these types of damages, the requests are clearly relevant. *Id.*

Defendants also argue that they have a right to discovery relating to insurance payments, because (1) "[i]f a party to a contract has already been paid under an insurance claim that party may be precluded from obtaining an award for breach of contract against another for the same monies," *See e.g. Bramalea California, Inc. v. Reliable Interiors, Inc.*, 14 Cal.Rptr.3d 302 (2004), (2) "[w]ithout knowing what amount of monies BB&T has received and for what purpose, [d]efendants are unable to defend themselves," and (3) "[t]here is no privilege between the FDIC and BB&T, a reality evidenced by BB&T's disclosure of this information in the Smoke Ranch case." *Id.*

With regard to the argument that defendants have the right to discovery of documents relating to consideration, defendants state that the court should look at N.R.S. 104.3303, which provides that:

> 1. An instrument is issued or transferred for value if:
>
>> (a) The instrument is issued or transferred for a promise of performance, to the extent the promise has been performed;
>> (b) The transferee acquires a security interest or other lien in the instrument other than a lien obtained by judicial proceeding;
>> (c) The instrument is issued or transferred as payment of, or as security for, an antecedent claim against any person, whether or not the claim is due;
>> (d) The instrument is issued or transferred in exchange for a negotiable instrument; or
>> (e) The instrument is issued or transferred in exchange for the incurring of an irrevocable obligation to a third party by the person taking the instrument.
>
> 2. "Consideration" means any consideration sufficient to support a simple contract. The drawer or maker of an instrument has a defense if the instrument is issued without consideration. If an instrument is issued for a promise of performance, the issuer has a defense to the extent performance of the promise is due and the promise has not been performed. If an instrument is issued for value as stated in subsection 1, the instrument is also issued for consideration.

Defendants argue that "[c]onsideration is directly at issue in this Action involving the transfer of an instrument (*i.e.* note). If BB&T paid monies (*i.e.* consideration) to FDIC for the transfer of the Note (which remains in question) but then FDIC paid BB&T monies under the PAA as a reimbursement,

[d]efendants have a right to assess such information and determine whether or not the consideration was sufficient under NRS 104.3303." *Id.* Defendants ask this court to compel the production of documents relating to the PAA: the payments between the FDIC and BB&T. *Id.*

### 3. Plaintiff's Opposition

Plaintiff argues that the defendants base their motion (#55) on the "mistaken impression that Defendants are entitled to reduce the amount they owe under the subject loan documents - dollar for dollar -- for any payments the FDIC has made to BB&T," and that "[d]efendants have no such legal right and should not receive a windfall based upon the [PAA] between the FDIC and BB&T..." (#59). The plaintiff asks this court to follow the Eleventh Circuit when it rejected a similar argument and held that "regardless of any reimbursement from the FDIC to BB&T, any recovery from the defendant would have to be conveyed from BB&T to the FDIC," and that discovery into this issue was therefore futile and needlessly expanded litigation. *Id* (citing *Branch Banking and Trust Company v. Maxwell*, [2013] WL 1136578 (11th Cir. 2013)(unpublished)).

Plaintiff provides the court with its overview of the instant "straightforward" case as follows: "BB&T loaned to DMSI ("DMSI" or "Borrower") more than three million dollars and the loan was guaranteed by the other defendants, but never repaid. Critically, this was an unsecured loan, so "consideration" as described in Chapter 40 of the Nevada Revised Statutes has no role in this litigation." *Id.* Plaintiff acknowledges that relevance for discovery purposes is much broader than that for trial purposes, but argues that "establishing that evidence will be relevant to a proceeding is a logical predicate to seeking an order compelling the discovery of such evidence. See, e.g., *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)." *Id.*

Plaintiff asserts that defendants' requests were improper (providing the court with the full text of the requests and responses), and that defendants have "recently retreated from their request for *all* documents that ever existed between BB&T and the FDIC, but still seek documents that have no

relevance to this litigation." *Id.* Plaintiff asserts that the requests are still improper because (1) defendants are not entitled to any set-off for payments made by the FDIC to the plaintiff and (2) consideration is not an issue in this action. *Id.*

With regard to the first argument, plaintiff states that defendants' position that they should receive a set-off is wrong because it "stems from a fundamental misunderstanding of the role Loss Share plays in the FDIC's battle for the viability of the U.S. banking system." *Id.* Plaintiff explains that "BB&T is the owner of Defendants' loan with the exclusive right to seek recovery of the amounts due," "[y]et, under the Loss Share, the FDIC reimburses BB&T 80% for losses and expenses on a pool of loans not just this loan." *Id.* Plaintiff further explains that "the financial arrangement that the FDIC has with BB&T is part of a comprehensive incentive package that the FDIC offers thriving banks as consideration for purchasing a failed financial institution," and that it "is not a one-for-one reimbursement for bad loans." *Id.*

Plaintiff also argues that loss-share payments are not for the benefit of the defendants, as the defendants are not parties to the PAA, they are not beneficiaries of the PAA, and the PAA states that the agreement "for the sole and exclusive benefit of the parties hereto and their respective permitted successors and permitted assigns and there shall be no other third party beneficiaries, and nothing in Commercial Shared-Loss Agreement or the Exhibits shall be construed to grant to any other Person any right, remedy or claim under or in respect of this Commercial Shared-Loss Agreement or any provision hereof." *Id.* Plaintiff asserts that since nothing in the PAA allows for the defendants to receive a set-off or relieves the defendants of their obligations to pay, "no inquiry into the financial dealings between the FDIC and BB&T can in any way be relevant to any of [d]efendants' defenses or lead to the admission of relevant evidence in this case." *Id.*

Plaintiff also makes the argument that loss-share payments on defendants' loan do not create a "double recovery" for plaintiff, as the PAA requires plaintiff "to pursue collection of these loans

through means which include litigation. In the event there is a recovery on a loan, the loss-share provision requires BB&T to remit to the FDIC any recoveries on a loss-share asset." *Id.* Plaintiff states that it must return "80% or 95% of the recovery to the FDIC, as the FDIC only pays 80% or 95% of the loss to the assuming Bank." *Id.*

Plaintiff's final argument is that the defendants are not entitled to the documents because consideration is not an issue in this litigation, as "NRS 104.3303 has absolutely no impact on the amount due and owing under the loan. Rather, NRS 104.3302 merely discusses the value that is required to allow a party to be a holder in due course. *See* NRS 104.3301, et. seq." *Id.* Plaintiff states that it "paid the book value for this loan, which was $3,500,000.00, as well as any accrued interest due as of August 14, 2009. *See* Exhibit 4 and Exhibit 6. This completely satisfied NRS 104.3303 and establishes that BB&T is the holder in due course of the note at issue herein." *Id.* Plaintiff states that since "this was an unsecured loan[,] "consideration" in Chapter 40 of the Nevada Revised Statutes has no role in this litigation," and asks this court to deny the motion (#55). *Id.*

**4.    Hearing/Discussion**

**a. Oral Argument**

During the hearing on the motion to compel (#55), defense counsel stated that through the document requests defendants seek to discover any documents relating to the loss-share payments under the PAA, including, but not limited to, communications, payments evidencing any transactions, and any document evidencing what the loan is worth. (#84). Plaintiff re-asserted its position that defendants are not entitled to this information, and pointed out to the court that since the loan at issue here, unlike in the Smoke Ranch Action, is an *unsecured* loan, the requested information is irrelevant. *Id.* Plaintiff argued that neither the PAA nor any other document amended the Note between the bank and the defendants, and that any payments made or received would not off-set the amount owed by defendants.

*Id.* Plaintiff also argued that the defendants are not a party to the PAA and that the PAA provides that there are no third party beneficiaries of the agreement. *Id.*

Defendants argued to the court that they are entitled to the requested documents to provide evidence for their defense that there was an oral agreement to write the loan at issue down. *Id.* Defendants also argued that the evidence will support their theory that BB&T deemed the loan "uncollectible" and was paid by FDIC, and, if plaintiff prevails in this action, plaintiff will receive the benefit of the interest that has accrued. *Id.* Defendants asserted that this would result in impermissible double recovery. *Id.* Defendants also presented a hypothetical to the court regarding what they believe could have occurred and the resulting "windfall" or "double recovery." *Id.* Defense counsel conceded that "holder in due course" was not an issue in this action. *Id.*

### b. Relevant Law/Discussion

Federal Rule of Civil Procedure 34(a) permits each party to serve the opposing party with document requests within the scope of Rule 26(b) that are "relevant to any party's claim or defense..." or, for good cause shown, "relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b). Relevance within the meaning of Rule 26(b)(1) is considerably broader than relevance for trial purposes. *See Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978) (citation omitted). For discovery purposes, relevance means only that the materials sought are reasonably calculated to lead to the discovery of admissible evidence. *Id.* In responding to Rule 34 requests, "the response must either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B). Pursuant to Rule 37(a)(3)(B)(iv), "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection" if "a party fails to respond that inspection will be permitted – or fails to permit inspection – as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iv).

The court finds that the requested documents are not relevant to the instant action and are not discoverable. *See* Fed. R. Civ. P. 26(b); *Oppenheimer Fund*, 437 U.S. at 351. As an initial matter, the court finds that the Smoke Ranch Action heavily relied upon by defendants is distinguishable from the instant action, as the Note at issue in that action was *secured,* and the Note at issue here is *unsecured. See* (#1);*Branch Bank and Trust Company v. Smoke Ranch Development, LLC et al* (2:12-cv-00453-APG-NJK). Consideration under NRS 104.3303 is also not an issue here, as plaintiff paid the book value for the loan, which was $3,500,000.00, as well as any accrued interest due as of August 14, 2009, and is the holder in due course. *See* (#59 Exhibits 4 and 6).

The court also finds that cases cited by defendants in support of their argument that the documents are relevant to the defense of "double recovery" are distinguishable from this action. In *Elyousefv. O'Reilly & Ferrario, LLC*, 245 P.3d 547, 549 (2010), "[a]fter recovering damages from [his] attorney regarding [a] failed business transaction, [a] client brought breach of fiduciary duty, negligence, and related claims against attorney's former law firm arising out of same transaction." The court held that "under the double recovery doctrine, a plaintiff can recover only once for a single injury even if plaintiff asserts multiple legal theories," and that "satisfaction of the plaintiff's damages for an injury bars further recovery for that injury." *Elyousef,* 245 P.3d 547, 549.

In *Davis v. Beling,* 278 P.3d 501, 513 (2012), a "[r]eal estate agent brought claims against [clients] for breach of contract, unjust enrichment, and fraud, [clients] brought counterclaims against agent for fraud and for violation of agent's statutory duties and against broker who employed agent for respondeat superior liability, and broker brought claims for breach of contract against [clients]." "Before sending the jury to deliberate, the district court provided it with various instructions, including an instruction regarding the out-of-pocket rule – that is, that the [clients'] damages should be limited to the difference between the value of what they received and the amount of money that they gave for it." 278 P.3d at 507. "[T]he special verdict forms that the district court provided to the jury also suggested

to the jury that it could award diminution damages to the [client's] on their fraud and NRS 645.257 claims." *Id.* On appeal, the Nevada Supreme Court stated in a footnote: "[w]e also note that in order to prevent a double recovery, any damages the [clients] are awarded should be reduced by the amount of payments that they received from renting the Ping Property." *Id* at 513 n.7 (citing *Elyousef,* 245 P.3d at 549). The main discussion related to whether the "district court...err[ed] in determining that the diminution in the value of the Ping Property was an appropriate measure of compensatory damages for the [clients'] NRS 645.257 claims. *Id* at 513.

In the action before this court, the defendants guaranteed the payment of all amounts due under the Note, and plaintiff acquired from the FDIC all the rights, title and interest in, to and under certain loan documents evidencing, securing, guarantying, and otherwise related to the Note. (#1). The FDIC and plaintiff entered into the PAA, which specifically provides that the agreement is "for the sole and exclusive benefit of the parties hereto and their respective permitted successors and permitted assigns and there shall be no other third party beneficiaries, and nothing in Commercial Shared-Loss Agreement or the Exhibits shall be construed to grant to any other Person any right, remedy or claim under or in respect of this Commercial Shared-Loss Agreement or any provision hereof." (#55-2). Pursuant to this provision of the PAA, any monies paid between the FDIC and plaintiff as a result of the PAA do not in any way effect the amount that the defendants guaranteed to pay to plaintiff under the Note. *See Id.*

The court finds the case of *Branch Banking and Trust Company v. Maxwell*, 2013 WL 1136578 (11th Cir. 2013) to be instructive. In that case, BB&T, the holder of the note, sued the guarantor of the note secured by real estate, and guarantor did not answer, resulting in entry of default judgment. *Maxwell*, 2013 WL 1136578 *1. Guarantor moved to set aside judgment, and the District Court "denied the motion to set aside the default judgment as to liability, but permitted Maxwell to challenge the fair market value of the collateral purchased by BB&T at the foreclosure sale, and held a hearing at

which evidence of the fair market value of the collateral was considered, and the amount of the deficiency judgment determined by the district court." *Id* at *1.

The court "limited discovery and limited the evidentiary hearing to a determination of the fair market value of the collateral at the time of the foreclosure sale," and "Maxwell argue[d] on appeal that the district court abused its discretion in thus limiting discovery and the evidence." *Id* at *2. Maxwell's position was that "the amount of the indebtedness owed (and thus the amount of the deficiency judgment) should be reduced by any partial satisfaction of the indebtedness from any source." *Id.* Maxwell argued in particular that "pursuant to the Shared–Loss component of the Purchase and Assumption Agreement between BB&T and FDIC, losses incurred by BB&T with respect to the assets acquired from Colonial Bank would be shared by FDIC," and that "he should have been permitted to engage in discovery with respect to the possibility that FDIC might have made payments to BB&T in partial satisfaction of this and other loans acquired by BB&T from Colonial Bank." *Id.*

The court held that Maxwell waived this argument by not raising it in his motion to set aside default, and that such an argument would have been futile, as even if "the Purchase and Assumption Agreement did in fact result in FDIC payments to BB&T allocable to losses incurred by BB&T with respect to the subject loan, that same agreement would require BB&T to reimburse FDIC upon BB&T's recovery from Maxwell." *Id.* The court also held that "it is clear that Maxwell is not an intended third party beneficiary of the Purchase and Assumption Agreement" and therefore "lacks standing to enforce its interpretation of that Agreement." *Id.* The court held that discovery into such issues would have been futile and would have unnecessarily expanded litigation. *Id.*

Here, discovery into any payments between FDIC and plaintiff would be futile, as (1) defendants are not parties to or third party beneficiaries of the PAA, (2) defendants will not receive a "set-off" of any payments made, (3) there is no issue of possible "double recovery," (4) there is no issue with

consideration, and (4) the loan at issue is unsecured.   As the requested documents are irrelevant, the defendants' motion is denied.  *See* Fed. R. Civ. P. 26(b); *Oppenheimer Fund*, 437 U.S. at 351.

Accordingly and for good cause shown,

IT IS ORDERED that defendants' Motion To Compel Discovery (#55) is DENIED.

DATED this 21st day of June, 2013.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE