UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| BRANCH BANKING AND TRUST COMPANY, a North Carolina banking corporation,<br><br>        Plaintiff,<br><br>   v.<br><br>D.M.S.I. L.L.C., a Nevada limited-liability company; YOEL INY; NOAM SCHWARTZ; Yoel Iny, Trustee of the Y&T INY FAMILY TRUST; NST HOLDING, INC., Trustee of the NS 1998 FAMILY TRUST; and DOES 1 through 10, inclusive,<br><br>        Defendants. | Case No. 2:11-cv-01778-APG-VCF<br><br>**Order Granting Plaintiff's Motion for Summary Judgment**<br><br>(Dkt. ## 63, 64, 65, 85) |

Branch Banking & Trust ("BB&T") has sued the defendants alleging, among other things, breaches of (1) a Promissory Note made payable to Colonial Bank. N.A. in the original amount of $2,000,000. (Dkt. #64 at 16) (the "Promissory Note" or the "DMSI Loan"), and (2) Commercial Guaranties guaranteeing payment of the Promissory Note (*Id.* at 20-27).

Defendants have moved for summary judgment on the basis that BB&T cannot establish its entitlement to enforce the Promissory Note. (Dkt. #65.) Defendants Y&T Iny Family Trust and NS 1998 Family Trust (the "Trust Defendants") have moved for summary judgment asserting that BB&T has failed to give them proper statutory notice of its claims. (Dkt. #63.) BB&T seeks summary judgment as to the Defendants' liability for breaches of the Promissory Note and Guaranties. (Dkt. #64.) Finally, the Defendants have requested permission to file supplemental briefs addressing the preclusive effect of a Nevada state court ruling. (Dkt. #85). Because all four

1

pending motions derive from the same facts, I address all four in this Order. The following facts are undisputed, except where noted:

On February 27, 2004, defendants D.M.S.I., LLC, Yoel Iny and Noam Schwartz executed the Promissory Note. (Dkt. #64 at 16) In connection with that loan, the Trust Defendants executed the Commercial Guaranties on March 3, 2004. (*Id*. at 20-27.) On September 1, 2006, Colonial Bank and the Defendants executed a Change-in-Terms Agreement that increased the amount under the Promissory Note to $3,500,000, and extended its maturity date to September 1, 2007. (*Id*. at 29.) The parties later executed a second Change-in-Terms Agreement that extended the maturity date to March 27, 2009. (*Id*. at 34.)

On August 14, 2009, the Alabama State Banking Department closed Colonial Bank and the FDIC was named receiver in order to liquidate and distribute the bank's assets. (*Id*. at 13.) On October 23, 2009, Tamara Stidham,[1] Karen Lugan, and Teresa Griswold executed a Bulk Assignment of Colonial Bank's assets from the FDIC to BB&T, but dated the Bulk Assignment's effective date as of August 14, 2009. (*Id*. at 41.) Under the Bulk Assignment, the FDIC assigned all of its

> rights, title and interests in and to all those certain Mortgages, Security Deeds, Deeds to Secure Debt, Deeds of Trust, . . . , and all such other instruments and security agreements securing loans owned . . . and held of record by Colonial Bank or any of its predecessors as of August 14, 2009 in the Public Records of the Counties of the State of Nevada and all modifications, extensions, amendments and renewals.

(Dkt. #64 at 40.) The Bulk Assignment was recorded in Clark County, Nevada on November 3, 2009. (*Id*. at 39.)

---

[1] Colonial Bank employed Ms. Stidham as assistant general counsel during the two-year period preceding the FDIC receivership. (Stidham Depo. Dkt. #65-10 at 5.) She then became BB&T's associate general counsel.

2

BB&T has submitted an Allonge (*Id*. at 50) that it asserts was "executed by the FDIC thereby assigning all rights, title and interest to BB&T." (*Id*. at 13-14.) The Allonge states that it is to be attached to the Promissory Note; it references Colonial Bank N.A. and D.M.S.I, LLC, the February 27, 2004 date of the Promissory Note, the loan account number and the principal amount of $200,000. (*Id*. at 50.) Although there is no date of execution, the Allonge states that it became effective as of August 14, 2009. (*Id*.) The Allonge is not attached to any other document, such as the Promissory Note or either of the Change in Terms Agreements.

Defendants point to a December 11, 2009 FDIC Limited Power of Attorney naming Tamara Stidham, among others, as the FDIC's attorney-in-fact. (Dkt. #65-14 at 2-3). Defendants emphasize that because that document was not executed until December 2009, Tamara Stidham was not authorized to execute the Allonge at the time of the Bulk Assignment notwithstanding the fact that this Limited Power of Attorney states that it shall be effective as of August 14, 2009 (the date of the Bulk Assignment). (*Id*. at 3.)

BB&T also has produced a document entitled Purchase and Assumption Agreement Whole Bank All Deposits Among FDIC and BB&T ("PAA"), dated August 14, 2009. (Dkt. #72 at 62.) Section 3.1 of the PAA states that, subject to exclusions in Sections 3.5 and 3.6, BB&T purchased all of the FDIC's rights, title and interest in all of Colonial Bank's

> Assets (real, personal and mixed, wherever located and however acquired) . . . . [The Attached and incorporated] Schedules 3.1[2] and 3.1a[3] sets [sic] forth certain categories of Assets [purchased under the PAA]. Such schedule is based upon the best information available to [FDIC] and may be adjusted as provided in Article VIII . . . . [BB&T] specifically purchases all mortgage servicing rights and obligations of [Colonial Bank].

---

[2] Schedule 3.1 relates to "Certain Assets Purchased." (Dkt. #72-1 at 30.)

[3] Schedule 3.1(a) relates to "Subsidiary and Other Business Combination Entities Acquired." (Dkt. #72-1 at 31.)

3

(*Id.* at 72.) Schedule 3.1 states:

> THE LIST(S) ATTACHED TO THIS SCHEDULE (OR SUBSCHDULE(S)) AND THE INFORMATION THEREIN, IS AS OF THE DATE OF THE MOST RECENT PERTINENT DATA MADE AVAILABLE TO THE ASSUMING BANK AS PART OF THE INFORMATION PACKAGE. IT WILL BE ADJUSTED TO REFLECT THE COMPOSITION AND BOOK VALUE OF THE LOANS AND ASSETS AS OF THE DATE OF BANK CLOSING. THE LIST(S) MAY NOT INCLUDE ALL LOANS AND ASSETS (E.G., CHARGED OFF LOANS). THE LIST MAY BE REPLACED WITH A MORE ACCURATE LIST POST CLOSING.

(Dkt. #72-1 at 30.) Despite this reference, no list is attached to the PAA. BB&T asserts that the Promissory Note and Guaranties were listed in Schedule 4.15(B) of the PAA as assets transferred. (Dkt. #72 at 7.) Exhibit 8 to the PAA is entitled "Non-Single Family Asset Detail for 10103 – Colonial Bank," bears the notation "Page 257 of 273," and identifies the DMSI Loan in the amount of $3,500,000. (Dkt. #72-2 at 35.)

Section 3.5 of the PAA identifies the following assets as being excluded from purchase:

> (b) any interest, right, action, claim, or judgment against … (iv) any other Person whose action or inaction may be related to any loss (exclusive of any loss resulting from such Person's failure to pay on a Loan made by the Failed Bank) incurred by the Failed Bank. . . .

(*Id.* at 76.) Another exclusion section, Section 3.6(a), provides that the FDIC had the right to refuse to sell any Asset otherwise acquired under the PAA if the FDIC determined that the Asset was essential to the FDIC. (*Id.* at 76.) Such Assets included those that the FDIC determined to be "the subject of any investigation relating to any claim with respect to any item described in Section 3.5(a) or (b), or the subject of, or potentially the subject of, any legal proceedings." (*Id.*) Nothing in the record indicates that the DMSI Loan was subject to any investigation or any legal proceedings as of the date the Bulk Assignment and PAA were executed.

On November 13, 2012, the FDIC and BB&T executed an Assignment of Loan Documents and Other Claims ("2012 Assignment"). (Dkt. #65-13.) The 2012 Assignment provides: "THIS ASSIGNMENT OF DEED OF TRUST, LOAN DOCUMENTS AND OTHER CLAIMS ("Assignment") is executed as of November 13, 2012, but is made effective as of August 14, 2009 ("Effective Date")...." (*Id.*) It further provides:

> Assignment of Loan Documents.  As of the Effective Date, [the FDIC] hereby assigns, sets over and transfers to [BB&T] all of its right, title and interest in, to and under the Loan and all the Loan Documents set forth on Exhibit "A" . . . together with all amendments, extensions, renewals and modifications thereto, including all of [the FDIC's] claims, demands, rights, remedies and interests therein, to have and to hold the same unto [BB&T], its successors and assigns.

(*Id.* at 3.)

Defendants failed to pay the amount due under the Promissory Note. (*Id.* at 4:21-22.) BB&T asserts that as of April 16, 2013, the balance due and owing under the Note was $5,684,170.41 (base amount of $3,450,179.31 plus interest of $2,233,991.10), with interest accruing at a per diem of $1,725.09. (Dkt. #64 at 2.)  BB&T also seeks to recover attorney's fees. (*Id.*; *see also* Dkt. #72 at 22.)  As discussed below, because BB&T has established that it is entitled to enforce the Promissory Note I grant its motion for summary judgment, and deny the Defendants' two motions for summary judgment.

## DISCUSSION

A.  **Defendants' Motion for Summary Judgment (Dkt. #65) and BB&T's Motion for Summary Judgment (Dkt. #64)**

Defendants argue that BB&T has failed to establish its standing to bring its claims. Defendants contend that the Bulk Assignment is defective, and that the Allonge and the 2012 Assignment do not cure those defects. (Dkt. #65 at 9, 12.)  Therefore, they argue, because BB&T

5

has no right to enforce the Promissory Note or Guaranties, it has no standing to maintain this lawsuit.

"The proper method of transferring the right to payment under a mortgage note is governed by Article 3 of the Uniform Commercial Code—Negotiable Instruments, because a mortgage note is a negotiable instrument." *Leyva v. Nat'l Default Servicing Corp.*, 255 P.3d 1275, 1279 (2011). UCC § 3-301 provides three methods by which a person can become entitled to enforce a note, two of which are relevant here: a person must either be a "holder" of the note, or the person can attain the status of a "nonholder in possession of the [note] who has the rights of holder." UCC § 3-301(a)(1)-(2).

### 1. BB&T has failed to establish that it has attained the status of "Holder"

A person is a "holder" if the person possesses the note and either (1) the note has been made payable to the person in possession, or (2) the note is payable to the bearer of the note. UCC § 1-201(b)(21)(A). This inquiry requires examination not only of the face of the note but also any endorsements. An endorsement means a signature, other than that of the maker, made for the purpose of negotiating the instrument. UCC § 3-204(a). This inquiry also includes determining whether any purported allonge was sufficiently affixed. *Id.*; *In re Weisband*, 427 B.R. 13, 19 (Bankr. D. Ariz. 2010) (assignee failed to demonstrate it was the holder of the note because while it was in possession of the note, it provided no evidence that the endorsement was stapled or otherwise attached to the rest of the Note); *In re Shapoval*, 441 B.R. 392, 394 (Bankr. D. Mass. 2010) (same).

Here, the Promissory Note was payable to Colonial Bank. (Dkt. #64 at 16.) The Allonge includes Tamara Stidham's endorsement (in her capacity as FDIC's attorney-in-fact), and states that it is to be affixed to the Note. The copy of the Promissory Note attached to BB&T's Motion

for Summary Judgment (Dkt. #64) does not include the Allonge.  BB&T has not proven that the Allonge was affixed to the Promissory Note.  Thus, BB&T has not established that it is the holder of the Promissory Note.  In order to enforce the Promissory Note, BB&T instead must prove it became a "nonholder in possession of the instrument who has the rights of a holder" under UCC § 3-301(a)(2).

    **2. BB&T is a nonholder in possession of the Promissory Note and Guaranties, and is entitled to enforce them.**

"An instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument." UCC § 3-203(a).  "Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument. . . ." UCC § 3-203(b).  While the failure to obtain the endorsement of the payee or other holder does not prevent a person in possession from being the "person entitled to enforce" the note, the possessor does not have the presumption of a right to enforce.  Rather, the possessor of the note must demonstrate both the fact and the purpose of the delivery of the note to the transferee in order to qualify as the "person entitled to enforce." *Leyva*, 255 P.3d at 1281.

Here, the Bulk Assignment sufficiently demonstrates the purpose of delivery: transfer to BB&T of all of the FDIC's "rights, title and interests in and to all those certain Mortgages, Security Deeds, Deeds to Secure Debt, Deeds of Trust, . . . and all such other instruments and security agreements securing loans owned . . . and held of record by Colonial Bank or any of its predecessors as of August 14, 2009." (Dkt. #72 at 46.)  BB&T has authenticated the DMSI Loan documents (including the Note, Guaranties, and Change-in-Terms Agreements) through its custodian of records Dennis Harms. (*Id.* at 63.)  Mr. Harms is competent to authenticate these documents; his sworn Declaration sufficiently establishes that BB&T possesses the original

DMSI Loan documents, and that the purpose of the delivery was to give BB&T the entitlement to enforce those documents.  Accordingly, BB&T is a nonholder in possession of the Promissory Note and Guaranties, and is entitled to enforce them regardless of whether the Allonge was attached.

Defendants also point to the 2012 Assignment as an indication that "BB&T did not have a valid assignment of the Promissory Note in dispute until November 13, 2012." (Dkt. #65 at 9:7-8.)  This argument is of no moment.  The Bulk Assignment assigned all notes and deeds of trust owned or held by Colonial Bank that were not specifically excluded from assignment.  Defendants have provided no evidence that the subject loan was excluded.  Moreover, the 2012 Assignment is more akin to "belt and suspenders": it was not needed to assign the Promissory Note and Guaranties because they had already been transferred through the Bulk Assignment.  And although the 2013 Assignment was executed November 13, 2012, it was specifically made effective as of August 14, 2009, the date the FDIC took control of Colonial Bank. (Dkt. #65-13 at 2.)  This further reflects the parties' intent that the Promissory Note and Guaranties were transferred from Colonial Bank to the FDIC and then to BB&T through the Bulk Assignment.

**B.     Defendants' Request for Leave to Submit Supplemental Briefing on Issue Preclusion (Dkt. #85)**

The Defendants have requested permission to file a supplemental brief addressing the preclusive effect of a Nevada state court ruling regarding BB&T, the FDIC, and Colonial Bank. (Dkt. #85.)  That request is granted.  However, because the case discussed in that supplemental brief is inapplicable to this case, no Response is needed from BB&T.

Defendants assert in their Supplemental Brief that the doctrine of issue preclusion requires dismissal of BB&T's claims because the Nevada state court has ruled that BB&T was not the proper successor in interest to Colonial Bank. *See Murdock v. Rad, et. al.*, 10-A-574852 (Decided

June 18, 2010), *affirmed by R & S St. Rose Lenders, LLC v. Branch Banking & Trust Co.*, Nev.S.Ct. Case No. 56640, 2013 WL 3357064 (Nev. May 31, 2013)). (Dkt. #85-1.) That case arose from a priority fight between BB&T and Saint Rose Lenders, LLC. The issue central to determining priority was whether BB&T had met its burden of proving that it received an assignment of Colonial Bank's interest in a 2007 Deed of Trust relating to a $43 million construction loan. (Dkt. #85-1 at 4.)

The trial court refused to admit into evidence two previously undisclosed documents: the Bulk Assignment (the same one at issue here) and an unrecorded assignment specifically prepared in connection with the loan at issue. Based on the limited documentation before it, the court found that BB&T had presented no admissible evidence to establish whether the loan documents were transferred as part of, or excluded from, the PAA. Because the loan documents could have fallen within one of the PAA's exclusion categories, the court found that BB&T held a second priority lien position behind the St. Rose Lender's Deed of Trust.

> Although BB&T repeatedly attempted to couch the issue as one of standing, it is not a standing issue. Rather, the defect which prompts the dismissal of BB&T's claims is evidentiary. BB&T failed to meet its burden of proof to establish that the Colonial Bank loan, note and deed of trust at issue in this case were ever assigned to BB&T. The court has given BB&T ample opportunity to submit proper evidence that the Colonial Bank loan, note and deed of trust at issue in this case were one of the assets acquired by BB&T when it purchased some of the Colonial Bank assets. BB&T instead relied upon the language of the [PAA], and no other admissible evidence, documentary or testimonial. The Court hereby finds that [the PAA] was not sufficient evidence, on its face, to establish that BB&T was assigned the 2007 Colonial Bank Deed of Trust.

On appeal, the Nevada Supreme Court noted that:

> "the FDIC [has the] ability to designate specific assets and liabilities for purchase and assumption . . . [and] a Court should look to the purchase and assumption agreement governing the transfer of assets between the FDIC and a subsequent purchaser of assets of a failed bank to determine which assets and corresponding liabilities are being assumed."

(Dkt. 85-1 at 6-7 quoting *Caires v. JP Morgan Chase Bank*, 745 F.Supp.2d 40, 48-49 (D. Conn. 2010).) The court agreed with the trial court:

> The PAA was an asset purchase and therefore the district court looked to its language in order to determine which assets and corresponding liabilities were transferred to BB&T. However, due to the omission of the schedules of assets, the district court found that PAA did not transfer the Construction Loan to BB&T. We agree. . . .

(*Id.* at 7.)

The *Murdock* case does not support the conclusion that BB&T is precluded from bringing this action. To the contrary, it appears that BB&T may have learned its evidentiary lesson from *Murdock*. In Nevada, the elements necessary for application of issue preclusion are: (1) the issue decided in the prior litigation must be identical to the issue presented in the current action; (2) the initial ruling must have been on the merits and have become final; (3) the party against whom the judgment is asserted must have been a party or in privity with a party to the prior litigation; and (4) the issue was actually and necessarily litigated. *Five Star Capital Corp. v. Ruby*, 194 P.3d 709, 713 (Nev. 2008). I need look no further than the first prong.

As quoted above, the decision in *Murdock* was based on the BB&T's lack of evidence: "the defect which prompts the dismissal of BB&T's claims is evidentiary." The trial court either excluded from evidence or simply did not consider the Bulk Assignment and other relevant documents. Here, however, the Bulk Assignment has been presented, as have several related documents. Accordingly, *Murdock* is not controlling here, and BB&T is not precluded from enforcing its rights under the Promissory Note.

/ / / /

/ / / /

### C. Defendants' Motion for Partial Summary Judgment and Dismissal of Claims Against Trust Defendants (Dkt. #63)

The Trust Defendants assert that BB&T failed to comply with NRS § 163.120(2), which sets forth notice requirements for a plaintiff suing a trust for breach of a contract entered into by a trustee. (Dkt. #63 at 4-5.) That statute provides as follows:

> A judgment may not be entered in favor of the plaintiff in the action unless the plaintiff proves that within 30 days after filing the action, or within 30 days after the filing of a report of an early case conference if one is required, whichever is longer, or within such other time as the court may fix, and more than 30 days before obtaining the judgment, the plaintiff notified each of the beneficiaries known to the trustee who then had a present interest. . . . of the existence and nature of the action. The notice must be given by mailing copies to the beneficiaries at their last known addresses. The trustee shall furnish the plaintiff a list of the beneficiaries to be notified, and their addresses, within 10 days after written demand therefor, and notification of the persons on the list constitutes compliance with the duty placed on the plaintiff by this section. Any beneficiary . . . may intervene in the action and contest the right of the plaintiff to recover.

NRS § 163.120(2). The Trust Defendants refused BB&T's demand for lists of beneficiaries. (Dkt. #67 at 7.) In separate orders, I required the Trust Defendants to produce a list of the beneficiaries (Dkt. #116) and the parties to file briefs informing me whether they believe BB&T satisfied the statute (Dkt. #121). In their supplemental briefs, the Trust Defendants argue only that BB&T failed to serve notice on the "Trust Remaindermen," that is, the individuals who would become beneficiaries if the present beneficiaries die. (Dkt. #127 at 2:4-10.) That argument fails.

BB&T contends (and the Defendants do not contradict) that Yoel Iny and Tikva Iny "are designated as lifetime beneficiaries" of the Y&T Iny Family Trust, and that "Noam Schwartz is the present beneficiary of the NS 1998 Family Trust." (Dkt. #126 at 4, 5, 16, 17.) BB&T also contends (and the Defendants do not contradict) that these three individuals received proper

11

notice of the claims asserted in this lawsuit. (*Id.* at 5-6.) Based on the supplemental briefs and attached exhibits, I conclude that the present beneficiaries of the Trust Defendants (Yoel Iny, Tikva Iny and Noam Schwartz) received proper notice under NRS § 163.120(2). Thus, the only issue is whether the "Trust Remaindermen" should have received notice.

Defendants identify the Inys' five children as Trust Remaindermen of the Y&T Iny Family Trust, and six other individuals as Trust Remaindermen of the NS 1998 Family Trust. (*Id.* at pp. 12-13.) Previously, however, the Defendants represented that the present beneficiaries (Yoel Iny, Tikva Iny and Noam Schwartz) are the "exclusive beneficiaries" of the respective trusts during their lifetimes, and that the Trust Remaindermen become beneficiaries only upon the death of the respective present beneficiaries. (*Id.* at 4-6.) NRS § 163.120(2) requires only that notice be given to "each of the beneficiaries . . . who then had a present interest. . . ." On its face, this applies to the present beneficiaries, not the Trust Remaindermen. Defendants argue that, because "present interest" is not defined, the spirit and purpose of the statute dictate that the Trust Remaindermen should be entitled to notice and an opportunity to participate in the litigation. (Dkt. #127 at 4-7.) That interpretation is not supported by the statute's plain language and could easily be taken to an extreme to also require notice to the future heirs or beneficiaries of the Trust Remaindermen. Such an interpretation could greatly expand the scope of the litigation into an unwieldy process. The statute is clearly designed to afford notice to the present beneficiaries of a trust so they can determine whether they should intervene in the lawsuit to protect their interests in the trust property. The notice provided in this case to Yoel Iny, Tikva Iny and Noam Schwartz satisfied the requirements of NRS § 163.120(2).

## CONCLUSION

**IT IS HEREBY ORDERED THAT** that Defendants' Motion for Partial Summary Judgment (Dkt. #63) is **DENIED**.

**IT IS FURTHER ORDERED THAT** Defendants' Motion for Summary Judgment (Dkt. #65) is **DENIED.**

**IT IS FURTHER ORDERED THAT** that Defendants' Request for Leave to Submit Supplemental Briefing on Issue Preclusion (Dkt. #85) is **GRANTED.**

**IT IS FURTHER ORDERED THAT** Plaintiff's Motion for Summary Judgment (Dkt. #64) is **GRANTED**.

**IT IS FURTHER ORDERED THAT** a status check is set for **October 16, 2014 at 2:00 p.m**.

DATED this 26th day of September 2014.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE